[No. B116450. Second Dist., Div. Three. May 4, 1999.]

SPRAY, GOULD & BOWERS, Plaintiff and Appellant, v. ASSOCIATED INTERNATIONAL INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Watkins & Stevens, Steven B. Stevens; Mazursky, Schwartz & Angelo and Christopher E. Angelo for Plaintiff and Appellant.

Bryan Cave; William I. Chertok; and Richard C. Ochoa for Defendant and Respondent.

---

## OPINION

**PETERSEN, J.**\*—Plaintiff Spray, Gould & Bowers is a law·firm (SG&B) which appeals the trial court's summary judgment in favor of the defendant Associated International Insurance Company (AIIC), based on the contract limitations period stated in the subject insurance policy. We hold that an insurer's direct violation of duly promulgated administrative regulations issued by the California Insurance Commissioner, requiring the insurer to notify a claimant insured of time limits pertaining to the claim, may provide the basis of an estoppel against the insurer's assertion of a contract limitations defense. The trial court's summary judgment is reversed and the matter is remanded for further proceedings.

### STATEMENT OF THE CASE

1. *The Complaint.*

On September 16, 1996, SG&B filed its complaint, alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. The complaint alleged that SG&B had suffered loss as a result of the Northridge earthquake on January 17, 1994, that claim on SG&B's contract of insurance with AIIC had been timely made, and that AIIC had wrongly refused to pay, together with subsidiary supporting allegations. On January 6, 1997, AIIC filed its answer, raising inter alia a contract limitations affirmative defense.

2. *The Summary Judgment Motion Proceedings.*

 a. *The Motion.*

On May 19, 1997, AIIC filed its motion for summary judgment, or in the alternative, for summary adjudication. The facts adduced in support of the summary judgment motion were the following. AIIC had sold to SG&B a combined business interruption and extra expense insurance policy (the

---

\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Policy), with an effective period of September 2, 1993, to September 2, 1994. The Policy contained a contractual limitations clause. That clause (entitled "Suit") provided that "no suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same shall be commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest period of time permitted by the laws of such State." The loss occurred on January 17, 1994. The loss was discovered by the insured on January 17-18, 1994. The insured made claim under the policy on November 21, 1994. On April 18, 1995, AIIC denied the claim. The action below was filed on September 16, 1996. AIIC contended that under the computation standards set forth in *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230], approximately 10 months of the 12-month limitation period elapsed between January 18, 1994 (the discovery of the loss) and November 21, 1994 (the date of the claim), the period was then tolled until April 18, 1995 (the date of denial of the claim), and thus the filing of the action an additional 17 months later on September 16, 1996, was untimely because of a net elapsed period of approximately 27 months, past the contract limitations limit of 12 months.

On July 2, 1997, SG&B filed its opposition to the motion. SG&B submitted declarations and discovery responses which stated that the SG&B employees charged with the responsibility for the claim (executive director and business managers) were unaware of the 12-month policy limitations period, and that AIIC did not advise SG&B of the 12-month limit in the exchange of correspondence relating to the claim. SG&B submitted in evidence California Code of Regulations, title 10, sections 2695.1 and 2695.4.[1] These sections comprise a portion of the Fair Claims Settlement Practices Regulations (§§ 2695.1-2695.17) issued by the California Insurance Commissioner (Cal. Reg. Notice Register 92, No. 52 (Dec. 15, 1992)).[2]

Section 2695.4, subdivision (a) (as in effect at the time of the issuance of the policy, the loss, and the submission and denial of the claim here),

---

[1] All further statutory references are to title 10 of the California Code of Regulations unless otherwise specified.

[2] Even though the time limit disclosure requirement of section 2695.4, subdivision (a) was retained in the 1997 amendments to the regulations (Register 97, No. 2 (Jan. 10, 1997)), we consider only the language of the regulations in place at the time of the events in question.

required insurers to disclose to insureds time limits which apply to submitted claims.[3]

In its opposition argument, SG&B principally contended that AIIC had failed to notify SG&B of the time limit for filing an action on the policy (other than of course the admitted existence of the policy provision), and that in light of SG&B's lack of actual knowledge of the time limit, AIIC should be estopped from relying on the policy limitations provision.

On July 11, 1997, AIIC filed a reply and evidentiary objections, in essence denying the applicability of section 2695.4, subdivision (a), under traditional contract and estoppel principles, to the limitations dispute. AIIC did not dispute its alleged violation of the regulation.

 b. *The Trial Court's Order and Judgment.*

The trial court agreed with AIIC, essentially on the grounds that the stated (and presumably intended) consequence of a regulatory violation was solely administrative action by the Insurance Commissioner. The trial court granted the summary judgment motion, and on September 22, 1997, entered judgment for AIIC. SG&B filed this timely appeal.

## CONTENTIONS

SG&B contends that the trial court's granting of summary judgment is erroneous in that: (1) AIIC did not prove its initial entitlement to summary judgment, (2) a triable issue of fact was raised as to whether AIIC was estopped to assert the statute of limitations defense, and (3) the trial court applied the wrong statutory period to the implied covenant and the declaratory relief causes of action.

We agree that a triable issue of fact was raised as to whether AIIC should be estopped from raising the limitations defense, and on that basis reverse the summary judgment. In light of our holding that AIIC's violation section 2695.4, subdivision (a) of the Fair Claims Settlement Practices Regulations (requiring the insurer to "disclose to" a claimant insured all policy "time limits . . . that may apply to the claim") may provide the basis of an estoppel against the insurer's assertion of a contract limitations defense,

---

[3]Section 2695.4, subdivision (a) provides in pertinent part: "Every insurer *shall* disclose to a first party claimant or beneficiary, all benefits, coverage, *time limits*, or other provisions of any insurance policy issued by that insurer that may apply to the claim presented by the claimant." (Italics added.) Certain classes of insurance, such as workers' compensation and medical malpractice, are excepted from the regulations.

SG&B established a triable issue of fact as to whether it had actual knowledge of the policy time limits applicable to the claim.

### DISCUSSION

1. *Introduction.*

 a. *Standard of Review.*

■ A summary judgment is properly granted if there is no question of fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In determining the propriety of a summary judgment, we are limited to those facts shown by the evidentiary materials submitted, as well as those admitted and uncontested in the pleadings. (*Sacks* v. *FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 962 [9 Cal.Rptr.2d 306].) On a motion for summary judgment, the moving party bears the burden of showing there are no triable issues of material fact. "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown . . . that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (o)(2).) The burden then shifts to the plaintiff to show the existence of a triable issue of fact.[4] (*Camp* v. *Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 629 [41 Cal.Rptr.2d 329].) In our review we exercise independent judgment in determining whether there are no triable issues of material fact and the moving party is thus entitled to judgment as a matter of law. (*Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653]; *Torres* v. *Cool Carriers A.B.* (1994) 26 Cal.App.4th 900, 904 [31 Cal.Rptr.2d 790].)

---

[4]We reject AIIC's contention that SG&B failed to preserve its estoppel argument by not pleading estoppel in the complaint. Of course when a complaint shows on its face (or with the help of judicially noticed facts) that a pleaded cause of action is apparently barred by the statute of limitations, plaintiff must plead facts which show an excuse, tolling, or other basis for avoiding the statutory bar (*Grange Debris Box & Wrecking Co.* v. *Superior Court* (1993) 16 Cal.App.4th 1349, 1360 [20 Cal.Rptr.2d 515]; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 886, p. 345), at least in order to avoid a successful demurrer. (See, e.g., *Kunstman* v. *Mirizzi* (1965) 234 Cal.App.2d 753, 755 [44 Cal.Rptr. 707], and *Muraoka* v. *Budget Rent-A-Car, Inc.* (1984) 160 Cal.App.3d 107, 115 [206 Cal.Rptr. 476] [Where a complaint shows upon its face that the statute of limitations has run, the plaintiff may anticipate the defense of limitation of action and allege facts to establish an estoppel.].) Quite apart from the fact this contention was not raised in the trial court, this pleading rule does *not* apply here because the limitations defense is not shown on the face of the SG&B complaint and is instead raised as new matter in AIIC's answer. (*Davies* v. *Langin* (1962) 203 Cal.App.2d 579, 583-584 [21 Cal.Rptr. 682].)

b. *AIIC Proved Its Initial Entitlement to Summary Judgment.*

AIIC showed that SG&B discovered the loss on January 17-18, 1994, made its claim on November 21, 1994, and that on April 18, 1995, AIIC denied the claim.

■ In the absence of statutory provisions to the contrary, 12-month contractual limitation provisions in insurance policies are generally valid, provided they are plain, clear and conspicuous, and further provided they are not unreasonable. (*C & H Foods Co.* v. *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1064 [211 Cal.Rptr. 765]; cf. *Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d 674 [statutorily required 12-month limitation provision in homeowner's policy valid, but held subject to further equitable tolling].)

Under *Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d 674, the one-year period is equitably tolled between the time that the insured notifies the carrier of the loss, and the written denial of the claim. Therefore, the period was indisputably tolled for the 10-month period between November 21, 1994 (the date of the claim), and April 18, 1995 (the date of denial). But the filing of the action came an additional 17 months later on September 16, 1996. This was a net elapsed period of approximately 27 months, well beyond the contract limitations limit of 12 months.

AIIC carried its initial burden to show the claim time-barred by the contract limitations provision according to computation formula set forth in *Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d 674.[5]

2. *SG&B Raised a Triable Issue of Fact as to Whether AIIC Was Estopped to Assert the Statute of Limitations Defense.*

■ SG&B's major contention is that AIIC should be estopped from relying on the contract limitations defense, because (a) SG&B was unaware of the 12-month limitations period, and (b) AIIC failed to disclose the short limitations period to SG&B, despite (c) the requirement of section 2695.4, subdivision (a) that "[e]very insurer shall disclose to a first party claimant . . . all . . . time limits . . . of any insurance policy issued by that insurer that may apply to the claim presented by the claimant."

■ An estoppel against a limitations defense usually " 'arises as a result of some conduct by the defendant, relied on by the plaintiff, which induces

---

[5]SG&B does not dispute AIIC's reading of the policy. AIIC does not dispute SG&B's reading of the regulation, nor seriously dispute SG&B's showing of lack of actual knowledge of the 12-month limitations provision, based on the record developed below.

the belated filing of the action.' " (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at pp. 689-690; *Velasquez* v. *Truck Ins. Exchange* (1991) 1 Cal.App.4th 712, 723 [5 Cal.Rptr.2d 1]; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 523, p. 550.)

■ " 'Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury.' " (*DRG/Beverly Hills, Ltd.* v. *Chopstix Dim Sum Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54, 59 [35 Cal.Rptr.2d 515].)

■ Application of equitable estoppel against the assertion of a limitations defense typically arises through some misleading affirmative conduct on the part of a defendant. There is no such affirmative conduct here. AIIC was mum on the subject of the limitations provision and any time limit governing the commencement of litigation after its denial of the claim. It is well established that mere silence will not create an estoppel, unless there is a duty to speak.

The absence of affirmative conduct here does not end the inquiry, however. An estoppel *may* arise from silence where there is a duty to speak. (*Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399 [154 P.2d 399]; *People* v. *Ocean Shore Railroad* (1948) 32 Cal.2d 406, 421-422 [196 P.2d 570, 6 A.L.R.2d 1179]; *Skulnick* v. *Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 891 [3 Cal.Rptr.2d 597]; *Lix* v. *Edwards* (1978) 82 Cal.App.3d 573, 580 [147 Cal.Rptr. 294]; *Dettamanti* v. *Lompoc Union School Dist.* (1956) 143 Cal.App.2d 715, 721 [300 P.2d 78]; *Crittenden* v. *McCloud* (1951) 106 Cal.App.2d 42, 48 [234 P.2d 642]; *Merry* v. *Garibaldi* (1941) 48 Cal.App.2d 397, 401 [119 P.2d 768]; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 179, p. 861.)

■ " ' "An estoppel may arise also from silence as well as from words or conduct. But this is only where there is a duty to speak, and where the party upon whom such duty rests has an opportunity to speak, and, knowing that the circumstances require him to speak, remains silent." [Citations] [¶] "It is not necessary that the duty to speak should arise out of any agreement, or rest upon any legal obligation in the ordinary sense. Courts of equity apply in such cases the principles of natural justice, and whenever these require disclosure they raise the duty and bind the conscience and base upon

the omission an equitable forfeiture to the extent necessary to the protection of the innocent party." [Citation.]' " (*Elliano* v. *Assurance Co. of America* (1970) 3 Cal.App.3d 446, 451 [83 Cal.Rptr. 509], citing 10 Cal.Jur., Estoppel, § 16, pp. 631-632.)

 SG&B argues that a duty to speak arises from the regulation. We agree. The regulation imposes on insurers an unmistakable duty to advise its claimant insureds of applicable claim time limits. The regulation directly targets the situation presented by this appeal. The regulation's purpose is salutary, designed to alert insureds to their insurance policy obligations, and to foster equity, fairness, and plain-dealing in claims handling. The promulgation of the regulations is expressly authorized by Insurance Code section 790.10.[6] The regulations flesh out the statutory public policy of the Unfair Practices Act, the purpose of which is to regulate trade practices in the business of insurance. (Ins. Code, § 790.) Section 790.03, subdivision (h) specifically forbids certain unfair claims settlement practices.[7] In sum, the commissioner's Fair Claims Settlement Practices Regulations represent the considered and duly promulgated public policy appropriate to the processing of its subject insurance claims in California.[8] We see no reason not to adopt this carefully considered public policy as giving rise to a duty to speak for the purpose of applying the doctrine of equitable estoppel. To do otherwise would arbitrarily undermine an applicable industry standard, one expressly designed to insure fairness in the claims process and resolution of claims on the merits. There seems no valid reason to ignore its command.

a. *Estoppel Is Not Precluded by the Limits of the Commissioner's Regulatory Authority.*

AIIC contends that estoppel based on violation of the regulation is inappropriate because the regulations themselves state the applicable sanctions: administrative action against the insurer's license and/or monetary penalties.[9] We disagree that the stated regulatory penalty necessarily ends the inquiry into extra-administrative effect to the insurance regulations. No

---

[6]Insurance Code section 790.10 provides: "The commissioner shall, from time to time as conditions warrant, after notice and public hearing, promulgate reasonable rules and regulations, and amendments and additions thereto, as are necessary to administer this article."

[7]Insurance Code section 790.03, subdivision (h) defines unfair methods of competition and unfair and deceptive acts or practices, and with reference to "unfair claims settlement practices" includes "[k]nowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: [¶] . . . [¶] (15) Misleading a claimant as to the applicable statute of limitations."

[8]AIIC does not contend that the regulations have been other than duly promulgated.

[9]As already noted, section 2695.4 is part of the California Fair Claims Settlement Practices Regulations. At the time of the events involved in this appeal, the specified consequences of

established legal doctrine precludes wider effect.[10] The failure of the Insurance Commissioner to adopt an estoppel sanction in the regulations cannot be taken ipso facto as a decisive expression of the commissioner's desire to limit the effect of regulatory violation to administrative sanctions. The commissioner might well have considered only that administrative sanctions represented the limit of his regulatory authority. The commissioner's failure to arrogate additional authority to himself cannot be seen as a tacit effort to retrench from the positive command and salutary effect of the insurance regulations.

But above all this, there is a more compelling reason why the limits of the commissioner's administrative power are not inconsistent with giving extra-administrative effect to the insurance regulations in first party claims disputes. *The commissioner's regulatory power is punitive, not remedial.* In contrast, equitable estoppel is not a punitive notion, but rather a remedial judicial doctrine employed to insure fairness, prevent injustice, and do equity. It stems from the venerable judicial prerogative to redress unfairness in the application of otherwise inflexible legal dogma, based on sound public policy and equity. (Cf. *Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at pp. 691-693.)

The object and purpose of the time limit disclosure requirement contained in the regulations is to preserve claims for resolution on the merits: to

---

a regulatory violation was set forth in section 2695.15: "Penalties. Any licensee who violates any regulation contained in this subchapter shall be subject to all applicable monetary penalties or other administrative actions within the jurisdiction of the Commissioner including, but not limited to, suspension or revocation of an insurer's certificate of Authority or license or revocation or suspension of an agent's license." Section 2695.15 was repealed in 1997, and some of its provisions repromulgated in section 2695.12. The range of penalties available to the commissioner remained as specified in the Insurance Code. Neither the regulations nor the Insurance Code *forbids* extra-administrative effect for violations of section 2695.4.

[10]Indeed, extra-administrative effect of regulatory pronouncements is hardly unprecedented. The influence of safety regulations has long been projected outside the administrative arena into their respective zones of operation under the negligence per se doctrine by shifting the burden of proof in personal injury cases (see Evid. Code, § 669, subd. (a)(1)), and by establishing prudent norms and customs, and standards of care. (Cf. *California Service Station etc. Assn.* v. *American Home Assurance Co.* (1998) 62 Cal.App.4th 1166, 1175-1177 [73 Cal.Rptr.2d 182] [Insurance Commissioner's regulation requiring insurers to furnish dividend disclosure statement to workers' compensation policy purchasers (§ 2505), did not create negligence duty of care or establish presumption of negligence under negligence per se doctrine, because authority to legislate the imposition of such a duty not delegated to the agency by the Legislature, distinguishing the possible relevance of such regulations to *standards* of care operating within an independently established duty of care].) Of course, any theory of *new or expanded insurer liability,* based upon a violation of regulations promulgated to enforce the provisions of Insurance Code section 790.03, may well be confronted with the authority of *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], and its progeny.

remedy the trap for the unwary. Yet the limit of the commissioner's administrative authority is to impose monetary penalties and adverse licensure action in order to coerce *future* compliance. Therapeutic as this may be, its effect is prospective only. The after-the-fact administrative sanction does nothing to rectify the very wrong the regulation was designed to prevent. Only if the courts, through their equitable powers, require compliance with the regulation will its purpose of claim preservation be achieved. It would be a perverse irony for government to take down an insured's valid complaint, and duly note the insured's evidence, with an eye only toward the next victim. To coldly inform the insured that the insurer will be called to account, but that the insured's claim will stand denied as untimely, is a deplorable inequity to be redressed.

If we allow an insurer to rely upon a preclusive policy provision as to which it was required, but did not, give the insured special notice, then we effectively place a premium upon insurer disregard of the regulation which imposed the requirement. The subsequent imposition by the commissioner of an administrative sanction may or may not induce *future* compliance, but we will have succeeded in encouraging the insurer to regard the question of regulatory compliance as a day-to-day business decision unrelated to the consequences of violation which might flow in a judicial proceeding to resolve a particular claim. Such a result will not necessarily cause insurers to adopt and implement a practice of compliance. In short, it is simply unacceptable for an insurer to take advantage of its own misconduct and thereby succeed in defeating an otherwise legitimate claim because the insured did not comply with a policy time limit of which it was not *actually* aware due to the insurer's failure to provide the required notice. The commissioner's Fair Claims Settlement Practices Regulations state a considered public policy, and deserve to be given practical and equitable effect.

### b. *Estoppel Is Not Precluded by Moradi-Shalal.*

AIIC contends that SG&B's arguments implicitly contravene the Supreme Court's rationale in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, that California's Unfair Practices Act (Ins. Code, § 790.03, subd. (h)) does not provide a private cause of action against insurance companies (in a third party case). In *Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833, 836-838 [262 Cal.Rptr. 106], *Moradi-Shalal* was extended to first party claims. However, *Moradi-Shalal* speaks only to whether the Unfair Practices Act creates a private right of action, and *not* to whether the regulations might form the basis of an estoppel where they are violated. Nothing in *Moradi-Shalal* suggests that insurer violations of the Unfair

Practices Act or its enabling regulations may not have consequences short of an independent private right of action. Indeed, in *Moradi-Shalal*, the court stated, ". . . apart from administrative remedies [under Insurance Code section 790.03], the courts retain jurisdiction to impose civil damages *or other remedies* against insurers in appropriate common law actions, based on such traditional theories as fraud, infliction of emotional distress, and (as to the insured) either breach of contract or breach of the implied covenant of good faith and fair dealing." (46 Cal.3d at pp. 304-305, italics added.) Accordingly, estoppel against the assertion of a limitations defense is not precluded by the holding or rationale in *Moradi-Shalal* or *Zephyr Park*.

 c. *Estoppel Is Not Inconsistent With Waller v. Truck Ins. Exchange, Inc.*

AIIC also contends that SG&B's arguments implicitly contravene the Supreme Court's holding in *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 34 [44 Cal.Rptr.2d 370, 900 P.2d 619], to the effect that an insurer is not estopped from asserting valid coverage defenses not mentioned in the denial of a claim, where no detrimental reliance is shown by the insured. But *Waller* is distinguishable because SG&B has raised a triable issue of fact on the element of detrimental reliance, through its declarations asserting lack of actual knowledge of the time limit applicable to its claim. Furthermore, *Waller* simply did not deal with the affirmative duty to speak imposed by the Fair Claims Settlement Practices Regulations.

 d. *Estoppel Is Not Precluded by SG&B's Arguable Constructive Knowledge.*

AIIC raises the question of whether SG&B can be said to be ignorant of the true facts, so as to be capable of being misled as to the policy limitations period, in light of the rule that an insured is charged with constructive knowledge of policy provisions which are plain, clear, and conspicuous. (*Hadland* v. *NN Investors Life Ins. Co.* (1994) 24 Cal.App.4th 1578 [30 Cal.Rptr.2d 88]; *C & H Foods Co.* v. *Hartford Ins. Co., supra,* 163 Cal.App.3d at p. 1064.) We must reject this contention. By its terms, section 2695.4, subdivision (a) requires the insurer to "disclose to" a claimant insured all policy "time limits." This obviously implies a type of notice, communicated independent of the policy itself, which is calculated to achieve actual rather than constructive knowledge. The implicit assumption of the regulation is that the mere existence of the policy provision is not enough, no matter how "plain, clear and conspicuous." The whole purpose of such notice is to assure *actual*, not merely constructive, knowledge, of the

contractual limitations period within which suit must be brought by an insured. To permit an insurer to enforce a time limit provision based solely on evidence of constructive notice would eviscerate the purpose of the regulation. AIIC cannot rely on the traditional doctrine deeming the insured to have constructive knowledge of policy provisions.[11]

e. *Estoppel Is Not Precluded by Any Prior Precedent.*

AIIC finally asserts that no California case has found the basis of an estoppel in an insurer's violation of the Insurance Commissioner's regulations. But references have been made to the substantive concept of requiring insurers to advise claimants of time limits. For example, in *Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at page 691, the Supreme Court specifically noted the proposal made by Appleman, to require insurers to give the notice SG&B states to be required by the regulation here: "Another commentator has suggested that insurers be required to give special notice to insured claimants of the running of the limitation period during the claims process. (20A Appleman, Insurance Law and Practice (1980) § 11601, pp. 435-436.) Appleman notes that, as a practical matter, the insured is usually unaware of and would not reasonably expect such a short

---

[11]We note that the policy language which follows the 12-month limitations requirement continues on with a proviso: ". . . provided however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest period of time permitted by the laws of such State." If this policy reference to "the laws of the State" is construed to include the commissioner's Fair Claims Settlement Practices Regulations, then the 12-month period would be invalid absent compliance with the regulations, and SG&B's action would appear to be timely under the policy. Under established principles, in the absence of special meaning or technical usage, insurance policy language is given its plain and ordinary meaning, resolving ambiguities in favor of coverage and against exclusions and limitations. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253].) The policy term "laws of the State" must certainly include statutes and case law. In the context of AIIC's insurance policy, the general and undefined term "laws" does not appear to be imbued with any special meaning or technical sense that would exclude duly promulgated insurance regulations. If, interpreted in its " 'ordinary and popular sense' " and according to "the meaning a layperson would ascribe to [that] contract language" (*ibid.*), the corpus of a state's "laws" is taken to refer to standards of conduct imposed by sovereign authority, and the obligation of obedience on the part of all subject to that authority, then it would appear to follow that the Fair Claims Settlement Practices Regulations, promulgated under the specific aegis of the sovereign authority of the State of California, might be incorporated into the policy as a matter of contract interpretation. However we need not reach this issue, or whether a contract term at odds with the Fair Claims Settlement Practices Regulations would be unreasonable, or otherwise unenforceable as contrary to public policy. (Rest.2d Contracts, § 178.)

limitation period to run while his insurer is still examining the claim. (*Ibid.*)"[12]

So far as we know, no other California appellate court has passed on the subject of an estoppel based in part on the Insurance Commissioner's Fair Claims Settlement Practices Regulations. However we find it appropriate under the facts of this case.

## CONCLUSION

We are mindful that this decision may change the way some insurers conduct themselves. But those insurers have no legitimate grounds for complaint. We create no new liability for insurers. We but bring clarity to an all too common claims situation where clarity is warranted. Like the commissioner's Fair Claims Settlement Practices Regulations, this decision will hopefully help to insure that valid claims will not be lost by an unusually short limitations period. The commissioner's regulations establish the standard of conduct for insurers in California. Insurers who flout the regulations have no right to gain a competitive edge on insurers who scrupulously follow the regulations and faithfully discharge their obligations to their insureds. Insurers who follow the law should not be put at competitive disadvantage, particularly at the expense of insureds who may have valid claims.[13]

---

[12]The full passage from Appleman is as follows. "Such contractual limitations do, however, present their dangers. In the abstract, it sounds perfectly logical to say that the parties have the right to agree upon any contractual provisions they may desire. But do they, in fact, do so? As a practical matter, *they do not. The contracts are prepared by the insurer and delivered*, usually in a voluminous printed form (often package), to the applicant. It is doubtful that even attorney-insureds read this mass of small print. They are then unaware, for example, of the fact that an action on a fire policy must be brought within 12 months, instead of the much longer period fixed by statute for actions upon written contracts generally. [¶] While I do not propose overruling the mass of authority holding such provisions to be valid, in view of the long acceptance of such rule, it would seem that a modification is in order. The insurer should be required, at the time a proof of loss is furnished, under any type of insurance contract, to notify the insured in plain and unmistakable language, in writing, that, in the event of any disagreement, action must be brought not later than—specifically designating the expiration date. *This could be imposed as an equitable requirement as a condition precedent for utilizing such defense.* It would require such suits to be brought while the facts are fresh and witnesses available, but it would stop insurers from utilizing such small print provisions, of which the insureds are unaware, as traps for the unwary. All too often, that is a current practice." (20A Appleman & Appleman, Insurance Law and Practice (1980) § 11601, pp. 435-436, italics added, fn. omitted.)

[13]In light of the disposition, we need not reach other contentions presented by the parties. Our disposition is without prejudice to a AIIC's pursuit of a new summary judgment motion

## DISPOSITION

The trial court's judgment is reversed and the matter is remanded for further proceedings consistent with the views expressed herein. SG&B shall recover its costs on appeal.

Klein, P. J., and Croskey, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 11, 1999.

---

if AIIC can establish actual knowledge on the part of SG&B. On this record a triable issue exists as to actual knowledge.