ROTHSCHILD, P. J.
*1051 Plaintiff and appellant Machavia, Inc. challenges the trial court's grant of summary judgment in favor of defendants and respondents the County of Los Angeles (the County) and John R. Noguez, in his *1052 capacity as Los Angeles County Assessor (the assessor).[1] Machavia sued the County for a refund of property taxes on two aircraft. The trial court granted summary judgment on the ground that Machavia had failed to exhaust its administrative *315 remedies prior to filing suit. Machavia now contends that it was not required to exhaust administrative remedies because various exceptions applied. We affirm.
FACTS AND PROCEEDINGS BELOW
This case arises from the County's assessment of property taxes over two small jet aircraft Machavia owned. Machavia purchased the first of these planes, a Cessna CJ2 (CJ2), in 2003, and sold it in 2006. Machavia purchased the second aircraft, a Cessna CJ3 (CJ3), in 2007. Machavia is incorporated in Delaware and claims that its principal place of business is the U.S. Virgin Islands. According to the County, both aircraft have been primarily located inside the County when not in use. The County claims authority to tax the aircraft pursuant to Revenue and Taxation Code section 5362,[2] which provides that "[t]he assessor of the county in which the aircraft is habitually situated shall assess the aircraft at its market value."
The County began sending annual tax bills for the CJ2 to Machavia in 2005. Until 2007, these bills were sent to a post office box in Manhattan Beach where Machavia did not always receive them. The bills went unpaid, and the County sent Machavia notices of intent to enforce collection and notices of lien to the same post office box. Machavia learned about the bills in 2006, and the company's president, Douglas Mockett, wrote a letter to the County claiming that the County lacked authority to levy taxes on Machavia because the company had moved to the Virgin Islands.
County officials met with Mockett in 2007 to discuss the tax bills. At the meeting, Mockett told the County that Machavia had sold the CJ2 prior to 2007, and the County officials agreed to cancel the tax bill for 2007. According to the County, its officials reviewed Machavia's flight logs and agreed to reduce the tax bills for 2005 and 2006 according to the time the CJ2 spent in the Virgin Islands. The County official who led the meeting stated that he told Mockett that, in order to preserve its rights with respect to future tax disputes, Machavia would need to file appeals with the County's Assessment Appeals Board (AAB). Machavia claims that Mockett left the meeting with the understanding that Machavia owed no taxes for 2005 and 2006 because of its foreign status, and that the County never informed him about the need to file further appeals with the AAB.
*1053 After the meeting, the County sent new tax bills for the years 2005 and 2006 to Machavia's address in the Virgin Islands. These bills reduced the taxes Machavia owed from the previously assessed amounts, and they allowed for payment without penalty until the end of 2008.
*316 In 2008, the County sent Machavia a tax bill for the CJ3, which Machavia had purchased in 2007. Machavia did not pay the bill, and the County imposed a lien on the CJ3. In April 2009, Mockett wrote to the County that Machavia had received the bill, but that "we have some issues with the bill" and requested that the County remove its lien. The County responded in July 2009 with a letter stating that, in the 2007 meeting, the County had "reduced the original assessments for 2005 and 2006 to allow for the apportionment of the time your aircraft actually spent in the U.S. Virgin Islands." The letter also reiterated that, in order to challenge the County's assessments, Machavia would need to file an appeal with the AAB.
In 2008, the County sent Machavia a notice of audit for the years 2005 through 2008. In 2009, the County sent the result of its audit, which stated that "the result is a 'No Deficiency' for all the years audited." An attached ledger listed "ND" for all columns, which Machavia interpreted to mean that it owed no further taxes for the years 2005 through 2008.
Also in 2009, the County sent Machavia a tax bill for 2009 for the CJ3. Mockett replied with a letter stating that Machavia believed it did not owe taxes, and referring to the "No Deficiency" finding regarding the audit. The County replied, stating that the 2009 tax bill was correct, and directing Machavia to file an appeal with the AAB by November 30, 2009, if it disagreed with the assessment. The letter also explained that "[t]he 'No Deficiency' finding merely indicated that the initial assessment was correct and no additional escape assessment will be made for the year audited."
In January 2010, Machavia filed an appeal with the AAB challenging the 2009 assessment. The assessor requested two continuances, delaying the hearing until August 2010. Machavia did not attend the hearing, claiming that it did not receive notice of the continuance. The AAB decided the appeal in favor of the County on the basis of Machavia's non-appearance and denied Machavia's request for rehearing.
The County sent another annual tax bill to Machavia for 2010, and Machavia replied with another letter claiming on the same bases as before that it did not owe any tax. In October 2012, when it discovered that the County had placed a lien on the CJ3, Machavia filed new appeals with the AAB. In November 2013, the AAB denied the appeals as untimely.
In response, Machavia filed a petition for a writ of mandate in the trial court. Machavia and the AAB entered into a stipulation to settle, under which *1054 the AAB agreed to hold a new hearing to address the validity of Machavia's appeal for the challenged years. After holding a hearing in 2015, the AAB again denied Machavia's petition on the ground that it was untimely.
Machavia filed a complaint in the trial court in 2013. In its operative complaint, Machavia sought a refund of the property taxes, which it ultimately paid under protest. In addition, Machavia alleges that it was deprived of due process because it did not have a meaningful opportunity to have its case heard. Next, Machavia contends that the assessor erred in its assessment of the aircraft. Finally, Machavia sought declaratory judgment, contending that the County is equitably estopped from collecting taxes, penalties, and interest. The County moved for summary judgment, which the trial court granted on the ground that Machavia had failed to prove that it had exhausted its administrative remedies.
DISCUSSION
Machavia raises several arguments in support of its contention that the trial court erred by granting summary judgment in favor of the County. First, Machavia contends that it exhausted its administrative remedies by filing appeals with the AAB. Next, Machavia contends in the alternative that it was unnecessary for it to exhaust its administrative remedies because various exceptions applied. Finally, Machavia contends that the County is equitably estopped from relying on failure to exhaust administrative remedies because the County's conduct induced Machavia not to appeal various tax bills through the ordinary administrative channels. We reject these arguments and affirm the judgment *317 of the trial court.[3]
I.-IV.**
V. Equitable Estoppel
Machavia contends that because the County misled it and failed to provide proper notice of tax bills, the County is equitably estopped from relying on Machavia's failure to exhaust administrative remedies. We are not persuaded.
"Generally speaking, the doctrine of equitable estoppel is a rule of fundamental fairness whereby a party is precluded from benefiting from his *1055 inconsistent conduct which has induced reliance to the detriment of another." ( In re Marriage of Valle (1975) 53 Cal.App.3d 837, 840, 126 Cal.Rptr. 38.) "Application of equitable estoppel against the assertion of a limitations defense typically arises through some misleading affirmative conduct on the part of a defendant." ( Spray, Gould & Bowers v. Associated Internat. Ins. Co. (1999) 71 Cal.App.4th 1260, 1268, 84 Cal.Rptr.2d 552.) This can mean that the defendant "engaged in some calculated conduct or made some representation or concealed facts which induced the plaintiff not to file a claim or bring an action within the statutory time." ( Ortega v. Pajaro Valley Unified School Dist. (1998) 64 Cal.App.4th 1023, 1047, 75 Cal.Rptr.2d 777.)
Machavia points to several instances in which it claims that the County either failed to notify Machavia of tax bills or misled it regarding the need to pay. But none of these instances show that the County engaged in "misleading affirmative conduct" that would justify the application of equitable estoppel. ( Spray, Gould & Bowers v. Associated Internat. Ins. Co. , supra , 71 Cal.App.4th at p. 1268, 84 Cal.Rptr.2d 552.) First, Machavia notes that the tax bills for 2005 and 2006 were sent to the Manhattan Beach post office box, rather than Machavia's address in the Virgin Islands. But as we have already seen, if this was error, the County corrected it by meeting with Machavia in 2007 and issuing new bills for 2005 and 2006 with no interest and penalties. Machavia contends that, at the 2007 meeting, the County misled it about the requirement to pay taxes for the years 2005 and 2006. But after the meeting took place, the County sent Machavia-at its Virgin Islands address-new bills for those two years. Even if County officials affirmatively misled Machavia during the 2007 meeting, the new bills should have been sufficient to disabuse Machavia of its misunderstandings, or at least to put the company on notice to enquire further.[6]
Machavia's allegations regarding subsequent years do not suggest affirmative misconduct by the County, but rather a failure by Machavia to understand the accurate information the County was providing. Thus, Machavia claims that it understood the 2008 audit and finding of " 'No Deficiency' " to mean that the County had cancelled its bills. But when Machavia raised this point with the County, a County official wrote back and explained that a finding of no deficiency meant merely that the County had determined its previous assessment was correct. Furthermore, on more than one occasion, County *318 officials told Machavia that the proper means to challenge an assessment was through an appeal to the AAB. That Machavia disregarded or *1056 misunderstood the County's communications does not create a triable question of material fact as to whether the County affirmatively misled Machavia.
This is not a case in which Machavia was blindsided by misrepresentations or misstatements by County officials. Instead, Machavia chose to ignore numerous accurate statements from the County regarding its tax liabilities, and acted only after-in some cases, years after-the relevant deadlines for filing challenges had passed. Machavia has failed to show that equitable estoppel should bar the County from asserting Machavia's failure to exhaust administrative remedies as a defense.
DISPOSITION
The trial court's order is affirmed. Respondents are awarded their costs on appeal.
We concur:
CHANEY, J.
JOHNSON, J.

For the sake of convenience, this opinion refers to defendants collectively as the County.

Unless otherwise specified, subsequent statutory references are to the Revenue and Taxation Code.

Machavia also contends that the trial court abused its discretion by denying Machavia's motion for a new trial. This claim fails for the same reasons as Machavia's challenges to the trial court's grant of summary judgment.

See footnote *, ante .

Machavia claims that when the company received the corrected tax bills, "it believed that these bills had been cancelled." This is not a reasonable interpretation of a newly issued tax bill received after a meeting regarding the taxpayer's liability for that tax year.