SEMX CORPORATION, Plaintiff,

v.

FEDERAL INSURANCE COMPANY, and Does 1 through 9, Defendants.

No. CIV04CV2449WQHWMC.

United States District Court, S.D. California.

Aug. 31, 2005.

---

Brooks L. Iler, Iler and Iler, Poway, CA, for Plaintiff.

Ann M. Ghazarians, Harrington Foxx Dubrow and Canter, Los Angeles, CA, for Defendant.

**ORDER: (1) GRANTING DEFEN- DANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. ONE [Doc. No. 15]; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. TWO [Doc. No. 22]**

HAYES, District Judge.

## I. *Introduction*

This case arises out of an insurance coverage dispute between a corporate policy holder and its insurer regarding certain claims made by the policy holder under an insurance policy containing first-party property and third party liability coverages. On November 1, 2004, Plaintiff SEMX Corporation ("Plaintiff" or "SEMX") filed a complaint against Defendant Federal Insurance Company ("Defendant" or "Federal") in the Superior Court of California for the County of San Diego. Plaintiff's complaint is based on Defendants alleged denial of certain claims for insurance coverage advanced by Plaintiff relating to an accidental release of chemicals that caused first and third party damages at Polese Company's (a subsidiary of Plaintiff) manufacturing plant in San Diego. On December 7, 2004, Defendant removed the action to this Court. On April 25, 2005, Plaintiff filed a first amended complaint.

Currently pending before the Court are two, separate motions by Defendant for partial summary judgment / adjudication. Both of Defendant's motions for partial summary judgment center on Defendant's assertion that it did not breach any duty owed to Plaintiff under the insurance policy. Defendant claims that it was not in breach of contract or in breach of the implied covenant of good faith and fair dealing with respect to the first and third party claims asserted by Plaintiff under the policy. On July 29, 2005, the Court heard the parties' oral arguments and now issues the following order.

## II. *Factual Background*

Plaintiff, is a corporation with it's principal place of business in New York. *First Amended Complaint ("FAC")*, ¶ 1. On or about March 21, 2001, Defendant, a licensed insurer doing business in California, insured Plaintiff under "comprehensive business" policy # 3529–07–27 STL (the "Policy"). *Id.* at ¶ 5. On or about March 21, 2001, an accident occurred at Plaintiff's Carroll Canyon premises ("the Polese Company") wherein ammonia gas was released into the air, causing damages which Plaintiff alleges were recoverable under the Policy. *Id.* at ¶ 7. Plaintiff alleges that it promptly notified Defendant of the accident and submitted a claim for its alleged damages. *Id.* at ¶ 7. Plaintiff allegedly enumerated in its claim, damages resulting from a loss of business, property damage, and alleged injuries to third parties. *Id.* at ¶¶ 7.

At some point after the submission of the claim, Defendant accepted liability for Plaintiff's loss of business and property damage, but initially denied coverage for third party tort claims advanced against Plaintiff. *Id.* at ¶ 8. Subsequently, Defendant provided Plaintiff with approximately $300,000 to cover the property damage Plaintiff sustained, paid $1,500,000 for "business interruption" and later "pick[ed] up the defense and indemnification of the claims for personal injury." *Id.* at ¶ 8. Plaintiff allegedly notified Defendant that it suffered a $4,000,000 loss in income due to the closing of its facilities. *Id.* at ¶ 9. Defendant retained the accounting firm of Cornwell & Nathan, LLP "to do an exhaustive review of plaintiff's business records." *Id.* at ¶ 10. Plaintiff alleges that Cornwell & Nathan "concluded that plaintiff lost approximately $1,785,001 in in-

come." *Id.* at ¶ 11. However, Plaintiff contends that Defendant did not pay Plaintiff the full amount of loss, as determined by Cornwell & Nathan. Further, Plaintiff alleges that Defendant breached its duty under the Policy when it failed to pay the amount of loss determined by Cornwell & Nathan. *Id.* at ¶ 12. In addition, Plaintiff alleges that Defendant had a duty to disclose the contents of a particular report prepared by Cornwell & Nathan (the "Cornwell report") in connection with Cornwell & Nathan's analysis. *Id.* at ¶ 16.

Additionally, at some point after the submission of Plaintiff's claim, Defendant denied a duty to cover Plaintiff in third party tort claims asserted by two individuals complaining of personal injury. *Id.* at ¶ 18. On several occasions between the date of the accident and approximately November 15, 2001, Plaintiff allegedly communicated its position to Defendant that Plaintiff was due coverage of the third party claims by way of defense and indemnity. However, Defendant allegedly maintained its position that the claims were not covered under the Policy. Plaintiff alleges that it proceeded in providing its own defense of the third party claims and assumed the cost of such defense. According to Plaintiff, on or about November 10, 2003, Defendant changed its position, and proceeded to defend and indemnify Plaintiff. Based on its allegations, Plaintiff asserts causes of action for (1) breach of contract, (2) bad faith, (3) unfair competition, and (4) fraud.

### III. *Legal Standard*

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party may meet this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. 2548. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party satisfies its initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct.

2548 (quoting Fed.R.Civ.P. 56(e)) (internal quotations omitted).

In ruling on a motion for summary judgment, "[t]he district court may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1030 (9th Cir.2001). Therefore, the court is not obligated to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (citing *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir.1995)). The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. "Credibility determinations [and] the weighing of evidence ... are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## IV. *Discussion*

Defendant moves for partial summary judgment in two separate motions. The first motion for partial summary judgment centers on Plaintiff's allegations relating to the settlement of the first-party[1] damage claims asserted by Plaintiff under the Policy. The second motion centers on Plaintiff's allegations that arise out of the way in which Defendant handled the third party suits filed against Plaintiff in the aftermath of the March 21, 2001 accident. The Court addresses each in turn.

### A. *Defendant's Motion for Summary Judgment on the First–Party Claims*

Plaintiff asserts causes of action based on Defendant's insurance coverage of the

first-party damages that Plaintiff suffered due to the March 21, 2001 accident: (1) breach of contract (the Policy); and (2) bad faith (also referred to as Plaintiff's breach of the implied covenant of good faith and fair dealing claim); (3) unfair competition and (4) fraud *See* FAC. Defendant's first motion for partial summary judgment moves for judgment on the breach of contract and bad faith causes of action on grounds that (1) Plaintiff's breach of contract and bad faith claims are barred by a two-year limitation contained in the contract for actions on a claim, and in the alternative (2) if the Court finds the contractual limitation to not apply, Plaintiff's bad faith claim is still barred by the governing statute of limitations. Defendant's first motion for partial summary judgment does not address Plaintiff's fraud or unfair competition causes of action.

### 1. *The Contractual Limitations Provision in the Policy*

Defendant's first ground in support of its motion for summary judgment on Plaintiff's causes of action based on first-party claims is that such claims are time barred by a provision of the Policy requiring such actions to be commenced within two years of the occurrence of a loss. In support of this contention Defendant refers to the "Conditions" section of the Policy which provides in pertinent part:

No legal action may be brought against us unless:

- there has been full compliance with all of the terms of this insurance; and

- the action is brought **within two years** after the date on which the

---

1. The Court notes that "first party" coverage, is coverage for losses suffered directly by the insured, Plaintiff. *See Garvey v. State Farm*

*Fire & Cas. Co.,* 48 Cal.3d 395, 399, 257 Cal.Rptr. 292, 770 P.2d 704 (1989).

direct physical loss or damage occurred.

Defendant's Decl. Of Hoffman; Exh. "G," p. 165 [emphasis added]. Defendant argues that it is undisputed that the direct physical loss or damage occurred on March 21, 2001, but that the current lawsuit was not filed until November, 2004, more than three years after the loss and almost exactly three years after the parties reached a settlement of the first-party claims.[2] Therefore, Defendant argues the contractual limitation in the Policy bars Plaintiff's first and second causes of action to the extent they assert claims based on first-party coverage. In support of its argument, Defendant points to California case law upholding similar contractual limitations periods despite the existence of a governing statute that provides a longer period of limitations.[3] *See* MSJ One, p. 10 (citing *C & H Foods Co. v. Hartford Insurance Co.*, 163 Cal.App.3d 1055, 1064, 211 Cal.Rptr. 765 (1984); *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Insurance Program*, 222 F.3d 643, 647–648 (9th Cir.2000)); *see also* Cal.Code Civ. Proc., § 337.

The Court concludes that Defendant has come forward with affirmative evidence, in the form of the Policy, that a contractual limitation provision bars Plaintiff's first-party claims. Further, Defendant has presented legal authority that in California an insurance policy may shorten the period of limitations to bring an action under the relevant policy. *See C & H Foods Co. v.*

*Hartford Insurance Co.*, 163 Cal.App.3d 1055, 1064, 211 Cal.Rptr. 765 (1984). Accordingly, the burden shifts to Plaintiff to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 56(e)) (internal quotations omitted).

Plaintiff opposes Defendant's motion and argues that there is a material factual dispute as to whether the contractual limitation contained in the Policy bars its first-party claims because (1) Defendant failed to give written notice of the limitations period; (2) Defendant is estopped from relying on the contractual limitation because of Defendant's "fraudulent concealment of its appraisal"; (3) the contractual limitations period was equitably tolled pending the resolution of the third party claim; and (4) Defendant is estopped from relying on the contractual limitations provision with respect to Plaintiff's cause of action for bad faith. Opposition Br. (One), pp. 1–2.

a. *Is The Contractual Limitations Period Estopped Due to Defendant's Alleged Failure to Give "Written Notice"*

Plaintiff argues that Defendant should be estopped from using the two-year limitation because it failed to provide specific

---

**2.** The parties agree that in November of 2001, approximately eight months after the March accident, a settlement under the Policy was reached with respect to first-party damages. *See* MSJ (One), p. 4; Opposition Br. (One), p. 4. Further, Defendant concedes that the contractual limitation was tolled during the period of damage assessment (March 2001—November 2001). However, Defendant notes that it was still settled by payment to Plaintiff in November of 2001, approximately three

years prior to Plaintiff bringing this action in November 2004. *See* MSJ One, p. 11 (citing *Prudential–LMI Commercial Insurance v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230).

**3.** Under the California Code of Civil Procedure the statute of limitations to bring an action upon a written contract is four years. Cal.Code Civ. Proc., § 337.

"written notice" to Plaintiff of the limitation and that there is a material factual dispute as to whether Plaintiff had actual knowledge of the limitation. *See* Opposition Br. (One), p. 3. There is no dispute that Defendant did not provide specific notice, other than in the Policy itself, to Plaintiff that the Policy contained a contractual limitations period shorter than the statute of limitation (for a breach of contract cause of action). Accordingly, Plaintiff's argument raises a legal issue as to whether Defendant had a duty to provide specific written notice. In addition, if Defendant had such a duty, and failed to provide such notice, the Court must determine whether Defendant has presented undisputed evidence that Plaintiff had actual notice of the provision.

In support of its argument, Plaintiff points to California Code of Regulations, Title 10, Section 2695.4 which provides: "(a) No insurer shall misrepresent, conceal or *fail to disclose* to a first party claimant or beneficiary all benefits, coverages, *time limits* and other provisions of any insurance policy ..." CAL. CODE REGS. tit. 10, § 2695.4 et. seq.,(emphasis added); *see also* Opposition Br. (One), p. 3. Plaintiff argues that the California Court of Appeal, applying Section 2695.4, has held that equitable estoppel may apply to a contractual limitation defense when the insurer does not "advise the insured of the limitations period." Opposition Br. (One), p. 3 (citing *Spray, Gould & Bowers v. Associated Internat. Ins. Co.,* 71 Cal.App.4th 1260, 1263, 1268, 84 Cal.Rptr.2d 552 (1999)). According to Plaintiff, Defendant's failure to give Plaintiff specific notice of the two-year contractual limitation should estop Defendant from relying on such a limitation based on *Spray.* Moreover, Plaintiff argues that according to the *Spray* court, an estoppel claim may defeat a contractual limitation defense unless there is proof that the insured had "actual knowledge of the limitations period." Opposition Br. (One), p. 4 (citing *Spray,* 71 Cal.App.4th at 1272–73, 84 Cal.Rptr.2d 552). Plaintiff argues that it did not have actual knowledge[4], and that "(a)t the very least," the question of whether it did have actual knowledge presents an issue of fact triable by a jury. *Id.* In addition, Plaintiff points out that under *Neufeld v. Balboa Ins. Co.,* the fact that an insured was represented by counsel does not relieve the insurer from complying with the notification requirements of the California Insurance Regulations. *See id.* (citing *Neufeld v. Balboa Ins. Co.,* 84 Cal.App.4th 759, 761, 101 Cal.Rptr.2d 151 (2000)).

Defendant argues that Plaintiff's position regarding a failure to provide "written notice" is deficient because the law supporting Plaintiff's argument is pertinent only in situations of *denied* coverage. *See* Reply Br. (One), p. 3. According to Defendant, no regulation, statute or case law requires an insurer in California to provide written notice of a contractual limitations period when the insurer accepts coverage and reaches a settlement with its insured. Defendant contests Plaintiff's reliance on

---

**4.** Plaintiff presents evidence of this issue in the form of declarations by Scott Shaffman, Robert Regalia, and Peter Doft. Mr. Shaffman declares that "I have found no documents indicating that FEDERAL at any time notified SEMX or its attorneys of the two year contractual limitations period." Shaffman Decl., ¶ 3. Mr. Regalia declares: "At no time did Chubb/Federal advise Polese/SEMX that there was a two year time limit on bringing suit regarding the business interruption and personal property losses and at no time was I ever aware of the two year time limit." Regalia Decl., ¶ 24. Mr. Doft declares: "At no time did Chubb/Federal advise Polese/SEMX that there was a two year time limit on bringing suit regarding the business interruption and personal property losses and I was not aware of the two year time limit until approximately July 20, 2004". Doft Decl., ¶ 25.

*Spray* and argues that *Spray* is inapplicable because in *Spray* the insured's claim was *denied* by the carrier and the plaintiff did not have actual knowledge of the provision. *See id.* at 7. By contrast, in the instant case Defendant did not deny Plaintiff's first-party claims, rather the parties reached a settlement of those claims. *See id.* Defendant further points out that in this case, in addition to the "full and final settlement," Plaintiff executed a "sworn proof of loss," and negotiated a settlement check "without protest." *Id.*

Additionally, Defendant argues that there is no regulatory requirement that an insurer specifically notify its insured of a contractual limitations period when it accepts coverage. Defendant supports its argument with citation to section 2695.7(f) of Title 10 of the California Code of Regulations, entitled "Standard for Prompt, Fair and Equitable Settlements," which provides in part:

> **Except where a claim has been settled by payment,** every insurer shall provide written notice of any statute of limitation or other time period requirement upon which the insurer may rely to deny a claim. Such notice shall be given to the claimant not less than sixty (60) days prior to the expiration date; except, if notice of claim is first received by the insurer within that sixty (60) days, then notice of the expiration date must be given to the claimant immediately.... This subjection shall not apply to a claimant represented by counsel on the claim matter.

Reply Br. (One), p. 8 (citing CAL. CODE REGS. tit. 10, § 2695.7(f) (emphasis added)). Finally, Defendant argues that as a matter of policy it simply "does not make sense" to require such a disclosure after settlement has been reached. *Id.*

The Court finds that Defendant met its initial burden by making a showing, based on uncontroverted facts, that Plaintiff sustained its first party damages on March 21, 2001, agreed on a settlement with Defendant in early November, 2001, and did not file suit until November of 2004 when the underlying insurance policy contained a contractual limitation of two years to bring suit on a claim. *See* MSJ One, pp. 2–4.; *see also Prudential–LMI Commercial Ins. v. Superior Court of San Diego,* 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (finding that the time limitation was equitably tolled until the date the claim was officially settled between the parties). Therefore, Defendant made a showing that the contractual limitation of two years had expired in November 2003, two years after the November 2001 settlement, barring Plaintiff's November 2004 suit.

Accordingly, when a defendant moving party has met its initial burden, the burden then shifts to the plaintiff non-moving party to show that "there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). Despite Plaintiff's efforts to persuade the Court to rely on the holding in *Spray,* the Court finds the instant case to be in contrast to the factual background presented in *Spray,* and therefore concludes that Plaintiff has not met it's burden.

■ The Court concludes that (1) Plaintiff fails to show that as a matter of law Defendant was required to provide notice of the contractual limitations period, and (2) it is unnecessary for the Court to reach the issue of whether Plaintiff had actual knowledge of the provision because Defendant did not owe Plaintiff a duty. The Court further concludes that the California Court of Appeal's decision in *Spray* is inapplicable to the instant case. In *Spray,* the court was faced with a contractual limitation that required the insured to bring suit on a claim within twelve months

of the event giving rise to the claim. *See Spray,* 71 Cal.App.4th at 1264, 84 Cal. Rptr.2d 552. As in the instant case, the insurer in *Spray* argued that the insured was barred from bringing an action because it had waited approximately seventeen months after the tolling period to bring suit. *See id.* The insured argued that the defendant should be estopped from using the contractual limitation due to the statutory requirement under the "Fair Claims and Settlement Practices Regulations," which states that no insurer shall "fail to disclose to a first party claimant ... all ... time limits ... of any insurance policy..." *See id.* (citing CAL. CODE REGS. tit. 10, § 2695.4). However, in *Spray* the defendant insurer *denied* the plaintiff's claim under the policy. Here, the parties do not dispute that the claim had been settled by payment approximately three years prior to the commencement of this action.

Moreover, the California insurance regulations do not require Defendant to provide notice of limitations provision where a claim is settled. California Code of Regulations, Title 10, Section 2695.7 expressly states that the notification requirement by the insurer of a contractual limitation does not apply "where a claim has been settled by payment." CAL. CODE REGS. tit. 10, § 2695.7. While the parties appear to each point to a regulation that supports their position, the Court finds that Section 2695.7 controls in this case. The Court notes that upon initial review the two regulations may appear to conflict, however, in the instance of conflicting provisions within a regulation, the more specific of the provisions governs. According to the California Supreme Court, in interpreting a statute [5],

It is well settled [ ] that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.

*Rose v. State,* 19 Cal.2d 713, 723–24, 123 P.2d 505 (1942). The Court finds that 2695.7 specifically addresses the instance of settlement of a claim, and therefore trumps the broader language contained in section 2695.4. Therefore, the Court finds that under section 2695.7 of the regulations, Defendant Federal did not have a duty to disclose the two-year contractual limitation in November of 2001, at the time the parties reached the settlement agreement.

In sum, the Court agrees with Defendant that the *Spray* decision cited by Plaintiff is inapplicable to the facts presented in this case. Here, unlike *Spray,* Defendant accepted coverage for the first-party claims and reached a settlement with its insured. California courts have not extended the rule of *Spray* to cases where an insurer accepts coverage, and this Court declines to set such a rule. Accordingly, in the face of a specific California regulation exempting Defendant from noticing Plaintiff of the contractual limitations provision, and without any case authority directly requiring such disclosure, the Court concludes that as a matter of law Defendant's failure to provide specific notice of the limitations provision does not estop Defendant from relying on that provision. Moreover, in the absence of a duty to specifically notice Plaintiff of the contrac-

---

**5.** The Court is mindful that it is interpreting a regulation, not a statute, but nevertheless finds the rules of statutory interpretation helpful to the resolution of the instant dispute.

tual limitations period the issue of Plaintiff's actual knowledge is moot.

### b. *Is Defendant Estopped From Relying on the Contractual Limitations Provision Due to Certain Alleged Fraudulent Behavior?*

Plaintiff's second argument in opposition to Defendant's motion for summary judgment on the first-party claims is that Defendant must be estopped from asserting its contractual limitation defense because Defendant behaved fraudulently in concealing the damage appraisal report compiled by Defendant's contracted accounting firm. *See* Response, pp. 4–8. As stated above, shortly after the March 21, 2001 accident, Defendant retained an accounting firm to review Plaintiff's records and compile a damage assessment report for Plaintiff's property and loss of business damage. *See* Complaint, ¶ 16; *see also supra* p. 2. Plaintiff alleges that prior to the November, 2001 settlement of the first-party claim, it requested (more than once) that Defendant provide it with a copy of the Cornwell report. *See* Opposition Br. (One), p. 4 (stating that Plaintiff's Chief Financial Officer, Robert Regalia, made "repeated requests" for the report but that "FEDERAL refused to share the report or its contents"); *see also* Opposition Br. (One), Exh. 4. Plaintiff alleges that Defendant fraudulently concealed the Cornwell report, causing Plaintiff to settle the first-party claim for $300,000 less than the damages assessed by the accounting firm.

As noted by Plaintiff, "(t)he existence of an estoppel is generally a question of fact." Opposition Br. (One), p. 5 (quoting *Rinaldi v. Workers' Compensation Appeals Board*, 199 Cal.App.3d 217, 223, 244 Cal.Rptr. 637 (1988)). However, in order for a party to succeed on an argument for equitable estoppel there are four key elements that must be established: ·

Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

*Driscoll v. City of Los Angeles,* 67 Cal.2d 297, 305, 61 Cal.Rptr. 661, 431 P.2d 245 (1967). *See* Opposition Br. (One), p. 5.

### (1) Party to be estopped must be apprised of the facts:

With respect to the first element of estoppel, Plaintiff alleges that Defendant was apprised of the facts because Defendant had a copy of the Cornwell report at the time the parties agreed on the $1.8 million settlement. *See* Opposition Br. (One), p. 5. Plaintiff provides evidence in support of this factual contention in the form of an email communication between Chris Copeland (Defendant's insurance adjuster) and his supervisor John Penfield. *See id.* In the November 1, 2001 email, Mr. Copeland suggests that the "total owed" as per the Cornwell report was $1,297,818. *Id.* Plaintiff alleges that Copeland then settled the claim for $1,000,000 one week later, without providing Plaintiff with the Cornwell report. *Id.*

Defendant argues that it did not have all of the facts available at the time of settlement, due to the fact that the Cornwell report available in November of 2001 was only a "preliminary" report. Defendant argues that Mr. Copeland did not have all of the information before him when he entered into settlement with Plaintiff. Defendant supports this argument with reference to Plaintiff's Exhibit "2," a report by Mr. Copeland to his supervisor, stating

that he had not yet reviewed all of the materials supporting Mr. Cornwell's analysis, but that he was willing to settle the claim due to the Plaintiff's settlement offer of $1.8 million. *See* Reply Br. (One), p. 5. Defendant argues that Plaintiff has not satisfied the first prong of equitable estoppel because the investigation into the appraisal was still ongoing at the time of settlement and the report was preliminary in nature and could not be relied upon. *See* Reply Br. (One), pp. 4–5.

The Court finds that there is a material factual dispute as to the first element of equitable estoppel: whether Defendant was aware of the pertinent facts. In particular, there is a factual dispute as to whether the "preliminary" report in the possession of Defendant provided an accurate assessment of Plaintiff's actual loss. However, this does not conclude the Court's analysis of this argument raised by Plaintiff. In order to establish equitable estoppel Plaintiff must prove all four elements of equitable estoppel. Accordingly, the Court turns to the second element of equitable estoppel—a defendant must intend that its conduct be acted upon.

(2) **Defendant must intend that its conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended:**

■ Plaintiff argues that Copeland's conduct on behalf of Defendant, was "intended to gain a negotiating advantage over [P]laintiff." Opposition Br. (One), p. 5. Plaintiff further argues that although silence ordinarily does not warrant an estoppel, "(a)n estoppel may arise from silence where there is a duty to speak." *Id.*, p. 6 (quoting *Spray,* 71 Cal.App.4th at 1268, 84 Cal.Rptr.2d 552). In support of its contention that Defendant had a "duty to speak," Plaintiff quotes the following language from *Spray:*

An estoppel may arise also from silence as well as from words or conduct. But this is only where there is a duty to speak, and where the party upon whom such duty rests has an opportunity to speak, and, knowledge that the circumstances require him to speak, remains silent. It is not necessary that the duty to speak should arise out of any agreement, or rest upon any legal obligation in the ordinary sense. Courts of equity apply in such cases the principles of natural justice, and whenever these require disclosure they raise the duty and bind the conscience and base upon the omission an equitable forfeiture to the extent necessary to the protection of the innocent party.

Opposition Br. (One), p. 6 (quoting *Spray,* 71 Cal.App.4th at 1268–1269, 84 Cal. Rptr.2d 552). Plaintiff also points to various case authority that identify the existence of a general duty to disclose certain information in contractual relationships. *See* Opposition Br. (One), p. 6.

Defendant argues that Plaintiff fails to cite any case law that specifically requires Defendant to disclose the type of information gathered by the accounting firm. Defendant further argues that the Cornwell report, addressing Plaintiff's damages due to the accident, was preliminary and incomplete at the time of the settlement. Defendant further argues that the Cornwell report was compiled from information that Plaintiff had provided the accounting firm and thus the same raw data was available to Plaintiff at the time of settlement. Finally, Defendant argues that Plaintiff initiated the settlement negotiations despite the fact that it did not have the Cornwell report.

■ The Court concludes that Plaintiff fails to provide authority to support its

argument that Defendant had a duty to provide Plaintiff with the Cornwell report prior to settlement. The Court is unpersuaded by Plaintiff's general policy arguments regarding the duties of parties to a contract. Therefore, the Court concludes that Plaintiff has failed to establish the second element of equitable estoppel.

### (3) The Other Party Must be Ignorant of the true state of facts:

The third element of a claim of equitable estoppel is that the party asserting estoppel must be ignorant of the true facts. Plaintiff argues that it "repeatedly requested the Cornwell report and was repeatedly denied access." Opposition Br. (One), p. 7. Plaintiff's own argument, and declarations of Robert Regalia and Peter Doft, reveal that Plaintiff knew that the Cornwell report existed. The undisputed evidence shows that Plaintiff was not ignorant of the existence of the Cornwell report, but was only ignorant of the contents of the report. Despite their inability to examine and review the Cornwell report Plaintiff elected to settle its claims with Defendant. The Court concludes that Plaintiff's deliberate decision to enter into the settlement agreement, with full knowledge that a report existed, that potentially differed from its own assessment of loss, fails to establish the third element of equitable estoppel.

### (4) The Party must rely upon the conduct to his injury:

The fourth element of a equitable estoppel claim is that the party asserting equitable estoppel relied on the fraudulent conduct to his detriment or injury. The Court need not resolve the issue of whether Plaintiff relied on Defendant's conduct to its detriment or injury as the Court concludes that Plaintiff fails to satisfy the second and third prongs of an equitable

estoppel claim. Thus, Plaintiff's equitable estoppel claim fails.

### c. Did the Ongoing Third–Party Claim(s) Toll the Statute of Limitations on the First–Party Claim?

Plaintiff argues that the statute of limitations, whether contractual or statutory, on its first-party claims was equitably tolled until the resolution of the third party claims. According to Plaintiff "[t]he issue thus presented here is whether the limitations period on one section of a policy may run out even while the limitations period on another section of the same policy is tolled." Opposition Br. (One), pp. 8–9. Plaintiff urges this Court to find that the limitations period was tolled until the resolution of the third party claims.

In support of its argument, Plaintiff relies on the California Supreme Court's holding in *Lambert v. Commonwealth Land Title Ins. Co.*, 53 Cal.3d 1072, 282 Cal.Rptr. 445, 811 P.2d 737 (1991). In *Lambert*, the California Supreme Court held that "the limitation period for an action under a title insurance policy for failure to defend accrues when the insurer refuses the insured's tender of defense, but is tolled until the underlying action is terminated by final judgment." *Id.* at 1080, 282 Cal.Rptr. 445, 811 P.2d 737. The *Lambert* court further held that "[t]he protection provided pursuant to a policy of title insurance would ring resoundingly hollow were the holder compelled to simultaneously enforce rights under the policy and defend a costly and potentially devastating claim against the subject property." *Id.* at 1081, 282 Cal.Rptr. 445, 811 P.2d 737.

It appears that the holding in *Lambert* is not limited to actions concerning title insurance coverage and applies broadly to insurance actions involving a duty to de-

fend.[6] However, the California Supreme Court's language in *Lambert* does appear to limit that holding to cases involving the duty to defend. *Id.* at 1077, 282 Cal.Rptr. 445, 811 P.2d 737 ("The insured must be allowed the option of waiting until **the duty to defend** has expired before filing suit to vindicate *that duty.*" [emphasis added].). Thus, *Lambert* stands for a more limited proposition than the one urged by Plaintiff[7], one not directly applicable to the situation presented in the instant case.

Here, Defendant moves for summary judgment on Plaintiff's *first-party* claims based on a contractual limitations provision. Defendant in this case did ultimately defend Plaintiff against the third party claims asserted against it. Plaintiff argues that any first-party claims it had against Defendant were tolled while Defendant was defending Plaintiff against the third party claims. However, *Lambert* simply did not address the situation where an insurer actually accepts the duty to defend. The Court notes that here Defendant does not move for summary judgment on third party claims on the basis of the expiration of a contractual limitations period.

■ The Court has reviewed Plaintiff's argument carefully and while that argument does present certain public policy advantages, Plaintiff cannot point to any decision or statute that compels the conclusion that the limitations period on its first-party claims was equitably tolled pending the outcome of the third party claims. This Court declines to set such a policy or to extend the grounds for equita-

ble tolling. Accordingly, the Court concludes that Plaintiff's argument that the limitations period on its first-party claims was equitably tolled fails.

**d. Breach of Implied Covenant of Good Faith and Fair Dealing Claim**

In addition to the breach of contract claim, Plaintiff also alleges that Defendant breached an implied covenant of good faith and fair dealing by (1) "failing to offer and refusing to pay the amount of loss as concluded by their own experts"; (2) refusing to disclose the Cornwell report; (3) "unfairly manipulating and influencing the CPAs in their evaluation of the loss"; (4) refusing to include "many" of Plaintiff's claimed lost sales in Defendant's evaluation of the business interruption loss; (5) initially refusing to defend the third-party claims; (6) "attempting to extort a release of [Defendant's] duty to defend and indemnify under the liability portion of the policy as a condition of payment under the business interruption portion of the policy" on two occasions; and (7) "[a]ttempting to settle the business interruption portion of the claim by going behind the backs of plaintiff's retained attorneys and dealing instead through plaintiff's insurance broker", Aon, without disclosing to plaintiff that Aon faced a "serious conflict of interest due to various illegal and anti-competitive schemes between Aon and defendant." *FAC,* ¶ 18. The contractual limitations period on its face applies to Plaintiff's claim of breach of the implied covenant of good faith and fair dealing. In addition, Defendant argues that not only does the two-year contractual limitation bar this action,

---

**6.** The Court notes that in discussing its holding, the California Supreme Court discussed insurance contracts generally and did not limit its discussion to title insurance. *Id.* at 1081 ("[T]he contract of insurance is unique in that the purchaser seeks not commercial advan-

tage, but rather peace of mind and security in the event of unforeseen calamity.")

**7.** The Court notes that Plaintiff does concede that the issue presented is "apparently one of first impression." Opposition Br. (One), p. 9.

but California Code of Civil Procedure, Section 339(1) bars it as well.

 The parties agree that an allegation of breach of an implied covenant of good faith and fair dealing is subject to a contractual limitation when such a limitation is present in a contract. *See* Opposition Br. (One), p. 10; Reply Br. (One), p. 12. Plaintiff, however, argues that the limitations period on its breach of implied covenant of good faith and fair dealing is equitably tolled for the same reasons it believes its breach of contract cause of action is equitably tolled. As the Court has determined that Plaintiff's arguments fail and that the contractual limitations period bars Plaintiff's first-party breach of contract cause of action, the contractual limitations period similarly bars Plaintiff's breach of implied covenant of good faith and fair dealing (bad faith) cause of action. The Court, therefore, does not reach the issue of whether the statute of limitations additionally bars this cause of action.

In sum, the Court concludes that Defendant has carried its burden to demonstrate that there are no material factual disputes and that on the basis of contractual and statutory limitations on bringing claims under the Policy, Defendant is entitled to judgment as a matter of law on Plaintiff's first-party causes of action. Plaintiff has failed to demonstrate that there are any material factual disputes or that Defendant is not entitled to judgment as a matter of law on Plaintiff's first-party claims. Accordingly, Defendant's motion for partial summary judgment on Plaintiff's first and second causes of action, to the extent such causes of action seek relief based on first-party liability claims, is **GRANTED**.

### B. *Defendant's Motion for Summary Judgment relating to Third–Party Claims*

In its second motion for partial summary judgment Defendant moves for judgment on the grounds that: (a) Plaintiff's breach of contract claim pertaining to the third party claims is without merit because Defendant provided a defense and indemnified Plaintiff as soon as a potentially covered claim was presented, and did not owe a duty to do so before such claim was presented; (b) Plaintiff's claim for breach of implied covenant of good faith and fair dealing pertaining to the third party claims under the Policy is without merit because Defendant had no duty to defend and indemnify prior to the presentation of a potentially covered claim as Defendant's position on non-coverage was reasonable; and (c) Plaintiff should be denied punitive damages because Plaintiff has no evidence that Defendant acted maliciously, oppressively or fraudulently in declining to defend and indemnify Plaintiff in the claims brought against Plaintiff by third parties.

### 1. *Breach of Contract Claim*

According to Defendant, in order for Plaintiff to succeed in a breach of contract claim, Plaintiff must show that (1) there was actual coverage under the policy, (2) Defendant breached its obligation to cover under the policy, and (3) Plaintiff was damaged due to Defendant's breach. *See* MSJ Two, p. 7 (citing *Golden Eagle Refinery Co., Inc. v. Associated Intern. Ins. Co.,* 85 Cal.App.4th 1300, 1308–1309, 102 Cal. Rptr.2d 834 (2001)). As discussed below, the Court concludes that Plaintiff has established each of these elements. Accordingly, Defendant's motion for summary judgment on Plaintiff's cause of action for breach of contract, based on the third party claims, must be denied.

Plaintiff claims that Defendant breached the Policy by its failure to immediately provide a defense and indemnification of Plaintiff at the time Plaintiff was sued by

certain third parties for injuries allegedly incurred as a result of the March 21, 2001 accident. *See* FAC, ¶ 18. Plaintiff alleges that it requested defense and indemnification by Defendant on several occasions and Defendant repeatedly declined to defend or indemnify Plaintiff. Plaintiff contends that in November 2003, after almost two years of providing its own defense and indemnification, Defendant changed its position and provided the requested coverage. Plaintiff claims that during the period of claim denial (December 2001—November 2003), Defendant was in breach of contract by failing to provide coverage for the third party claims. Defendant now moves for summary adjudication on the breach of contract claim, arguing that an exclusion contained in the Policy justified its initial rejection of Plaintiff's third party claims.

In support of its motion, Defendant points to the section of the Policy that outlined exclusions to Defendant's General Liability:

> Pollution: This insurance does not apply to bodily injury ... arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants; at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; ...

MSJ Two, pp. 5–6 (citing D.U.F. No. 5) (emphasis added in MSJ). Defendant also states that the insurance policy defines "pollutants" as "(a)ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." MSJ Two, p. 8. Defendant argues that following Plaintiff's notification it carefully reviewed the Policy

and the alleged injuries resulting from the accident, and determined that the pollution exclusion applied and no coverage was available under the Policy for the third party claims. Defendant argues that it timely informed Plaintiff that it was taking the position that ammonia fell within the definition of pollutant in the Policy, and that the respective injuries received due to the release of the ammonia were excluded from coverage.

As an initial matter, there are several undisputed facts with respect to this breach of contract claim. First, the parties do not dispute that the Policy included a standard pollution exclusion. Further, it is undisputed that Plaintiff on several occasions requested Defendant defend and provide coverage for the third party claims, despite Defendant's initial and subsequent refusals. Third, the parties agree that Defendant relied on the pollution exclusion in denying coverage from December 18, 2001, when it was first notified of the third party claims, until November 7, 2003, when it first accepted coverage following Plaintiff's notification to Defendant of the 2003 California Supreme Court decision in *MacKinnon v. Truck Insurance Exchange*, 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003). Following Plaintiff's letter to Defendant referencing *MacKinnon* Defendant assumed the defense of the third party claims and reimbursed Plaintiff for (at least some [8]) expenses incurred in defending the third party claims for the previous approximately two and a half years.

In analyzing Defendant's motion to dismiss the breach of contract cause of action, the Court begins with a discussion of the California Supreme Court's decision in

---

**8.** Part of Plaintiff's claims against Defendant relate to Defendant's alleged failure to pay $9,000 in defense costs they dispute and interest on the more than $300,000 Plaintiff advanced to defend the third party claims until Defendant finally assumed coverage on November 7, 2003. Opposition Br. (Two), pp. 2, 5.

*MacKinnon v. Truck Insurance Exchange,* 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003). In *MacKinnon,* the California Supreme Court was faced with an insurance policy that contained a similar "pollution" exclusion. *See MacKinnon,* 31 Cal.4th at 639, 3 Cal.Rptr.3d 228, 73 P.3d 1205. In *MacKinnon,* a third party was killed during a residential spraying of a pesticide at an apartment building. *See id.* at 640, 3 Cal.Rptr.3d 228, 73 P.3d 1205. The owner of the apartment building had a comprehensive general liability ("CGL") policy with the defendant that included a pollution exclusion. *Id.* at 639–40, 3 Cal. Rptr.3d 228, 73 P.3d 1205. Following the initiation of a lawsuit by the family of the deceased third party, plaintiff made a claim under his CGL policy. *Id.* The insurer denied coverage on the basis of the pollution exclusion. *Id.*

The California Supreme Court held that the pollution exclusion did not exclude the claimed injuries from coverage and that in order for an exclusion clause in an insurance policy to be effective, the clause " 'must be conspicuous, plain and clear.' " *Id.* (quoting *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 271, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)). The court further held that the pollution exclusion in the policy did not "plainly and clearly exclude ordinary acts of negligence involving toxic chemicals such as pesticides." *Id.* The court pointed out that courts around the country were divided in dealing with the contours of the standard pollution exclusion. *Id.* at 641–43, 3 Cal.Rptr.3d 228, 73 P.3d 1205. However, in reaching its decision, the court noted that under California law, insurance coverage should be " ' "interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer." ' " *Id.* at 648, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (quoting *White v. Western Title Ins. Co.,*

40 Cal.3d 870, 881, 221 Cal.Rptr. 509, 710 P.2d 309 (1985)). The *MacKinnon* court held that the insurer's "interpretation of the pollution exclusion [that any irritant constitutes pollution] leads to absurd results and ignores the familiar connotations of the words used in the exclusion." *Id.* at 652, 3 Cal.Rptr.3d 228, 73 P.3d 1205. The *MacKinnon* court also pointed out that the purpose of the pollution exclusion was originally an effort by the insurance industry to avoid claims based on new environmental laws passed in the 1970's and 1980's—not to avoid coverage for ordinary acts of negligence. *Id.* at 643, 3 Cal. Rptr.3d 228, 73 P.3d 1205.

Defendant argues that at the time of the incident, and up until November 2003, the exclusion wording contained in the Policy provided an arguable exception to coverage due to the existing case law pertaining to such exclusions. In denial of Plaintiff's third party claims, Defendant provided correspondence that entailed the existing case law that it believed to support its position of denial of coverage. *See* MSJ Two, pp. 9–10 (referencing letter sent by Thomas Correll, counsel representing Defendant at the time).

Defendant's correspondence cited *Titan Corp. v. Aetna Casualty & Surety Co.,* 22 Cal.App.4th 457, 27 Cal.Rptr.2d 476 (1994) stating, "where a policy clearly excludes coverage, [the court] will not indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage." However, as expressed by the California Supreme Court's ruling in *MacKinnon,* the standard pollution exclusion does not "clearly exclude" coverage for certain acts of negligence. Moreover, Plaintiff points out that the facts in *Titan* differed from those in the instant case. In *Titan,* the insurer refused to pay for damages that resulted from the insured's *continuous* release of trichloroe-

thylene ("TCE") into waterways as a result of the insured's industrial operations. In the instant case, however, Plaintiff sought coverage for a one-time *accidental* release of ammonia gas into the atmosphere surrounding its plaint. Thus, Defendant's reliance on *Titan* was misplaced.

Defendant also supported its position of denial of the third party claims with citation to a case before the United States District Court for the Southern District of Mississippi. *See American States Insurance Company v. F.H.S., Inc.*, 843 F.Supp. 187 (S.D.Miss.1994). In *American States,* a plaintiff sought coverage for injuries caused by an accidental release of ammonia gas during industrial operations—essentially the identical situation presented in this case. The policy at issue in *American States* contained almost identical language to the language in the instant policy. The *American States* court held that the pollution exclusion clearly applied to the ammonia gas. *Id.* at 188. At the time of the claim denial, Defendant argued that the Mississippi case was persuasive because the California courts had not yet been faced with a similar situation. However, Plaintiff argues that Defendant's reliance on a case from a district outside California to deny the claim was a clear breach of contract.

Defendant further argues that it should be granted summary adjudication on the breach of contract claim because after the *MacKinnon* decision by the California Supreme Court, it immediately changed its position to accommodate the recent development in California law. Plaintiff discounts this argument by stating the "general rule that judicial decisions .are given retroactive affect is basic to our legal tradition." Opposition Br. (Two), p. 4 (quoting *Newman v. Emerson Radio Corp.*, 48 Cal.3d 973, 978–982, 258 Cal.Rptr. 592, 772

P.2d 1059 (1989)). Plaintiff further argues that with respect to the retroactivity principle, Defendant was subject to liability for the third party claims all along, and that Defendant did not make a new discovery of "fact" when the *MacKinnon* decision was released, rather Defendant was simply subject to the standards of the law in California. *See id.* In response to Plaintiff's retroactivity argument, Defendant relies solely on the holding in *CNA Casualty,* which stated that an insurer's duty to defend is determined on the facts at the time of tender. *See* MSJ Two, p. 7 (quoting *CNA Casualty,* 176 Cal.App.3d at 605, 222 Cal.Rptr. 276); *see also* Reply Br. (Two), p. 2.

As stated above, in order for Plaintiff to establish a breach of contract claim against Defendant, Plaintiff must be able to show that Defendant had a duty to defend and indemnify Plaintiff on the third party claims at the time that it denied such coverage. The parties agree on the wording of the Policy and there is no dispute as to the facts, or the sequence of events that took place during the period of denial by Defendant. Therefore, the issue of whether Defendant owed Plaintiff a duty is an issue of law. *See AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 818, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). Accordingly, the determination as to whether or not Defendant had a duty to defend and indemnify Plaintiff on its third party claims is appropriate for resolution on summary judgment.

▌ The Court concludes that Defendant has failed.to show that it is entitled to judgment as a matter of law on Plaintiff's breach of contract cause of action, to the extent that cause of action relates to the third party claims. It is fundamental that the duty to defend is broader than the duty to indemnify. *Montrose Chemical Co. v. Superior Court,* 6 Cal.4th 287, 295,

24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). Further, under California law, an insurer must defend its insured in suits which potentially seek damages within the coverage of the subject policy. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993); MSJ Two, p. 7. Moreover, doubts as to whether particular facts give rise to a duty to defend are resolved in an insured's favor. *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 606, 222 Cal.Rptr. 276 (1986). The undisputed facts presented clearly reveal that there was some doubt as to whether the pollution exclusion contained in the Policy excluded from coverage the claims by the third parties arising out of the accidental release of ammonia from Plaintiff's factory.

■■■ The Court disagrees with Defendant's contention that *MacKinnon* changed the law in California. *MacKinnon* did not change the law in California, it clarified it. Given the great split of authority throughout courts in the United States over the contours of the pollution exclusion, as fully discussed in *MacKinnon* [9], Defendant wagered a guess that California courts would broadly interpret the standard pollution exclusion. Defendant was wrong. Instead, in California "[c]overage will therefore be found unless the pollution exclusion conspicuously, plainly and clearly apprises the insured that certain acts of ordinary negligence, such as the spraying of pesticides in this case, will not be covered." *MacKinnon*, 31 Cal.4th at 649, 3 Cal.Rptr.3d 228, 73 P.3d 1205. Here, the undisputed evidence reveals that the third party claims sought damages from injuries related to a one-time accidental release of ammonia into the atmosphere—not a long term, or repeated, release of an item into the environment. Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiff's breach of contract cause of action, with respect to the third party claims.

■■■ Nevertheless, factual issues remain for trial. For instance, whether or not Plaintiff's claimed losses, including the $9,000 Plaintiff claims Defendant has failed to reimburse, were incurred in the defense of the third party claims and the appropriate amount of such losses. Plaintiff admits that whether the additional $9,000 claimed by Plaintiff was for the defense costs is an issue of fact not appropriate for summary judgment. Opposition Br. (Two), p. 2. Similarly, the issue of the interest Plaintiff is entitled to, if any, and the amount of such interest on the up-front fees incurred by Plaintiff in defense of the third party claims is a question of fact not appropriate for resolution on summary judgment.

### 2. Plaintiff's Cause of Action for Breach of Implied Covenant of Good Faith For the Third Party Coverage

■■■ Plaintiff claims that Defendant breached the implied covenant of good faith and fair dealing by "[r]efusing to defend on the third party losses on the basis of a pollution exclusion, despite the fact that said exclusion was inserted in the policy by defendants to exclude the costs of government-ordered clean-up of toxic waste, and was never intended to cover ordinary acts of negligence which might involve toxic materials." FAC, ¶ 18. Under California law an insured claiming a breach of the implied covenant of good faith and fair dealing arising from the denial of insurance policy benefits must show that (1) coverage existed under the policy, and (2) that the insurer's failure to

9. *See* 31 Cal.4th at 641–44, 3 Cal.Rptr.3d 228, 73 P.3d 1205.

provide the policy benefits was unreasonable or without proper cause. *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1151, 271 Cal.Rptr. 246 (1990). An insurer's bad faith liability may be decided as a matter of law where the material facts underlying the cause of action are undisputed. *Dalrymple v. USAA*, 40 Cal.App.4th 497, 504, 46 Cal.Rptr.2d 845 (1995).

Defendant moves for summary adjudication on this claim on grounds that (1) prior to the California Supreme Court's ruling in *MacKinnon* Defendant did not owe a duty to defend and indemnify and therefore cannot be liable for bad faith; (2) recent case law has established that Defendant would not owe a duty to Plaintiff; and (3) because there was a genuine issue as to whether a potential for coverage existed, Defendant's position was reasonable and does not constitute bad faith.

Defendant's first ground in support of its motion for summary judgment, that prior to the California Supreme Court's decision in *MacKinnon* it did not owe a duty to defend and therefore cannot be liable for bad faith, clearly fails. As discussed above, *MacKinnon* did not change the law in California, it simply clarified it. Defendant took the position that California courts would broadly interpret the standard pollution exclusion. Defendant did not accurately forecast the decision of the California courts. In California "[c]overage will therefore be found unless the pollution exclusion conspicuously, plainly and clearly apprises the insured that certain acts of ordinary negligence, such as the spraying of pesticides in this case, will not be covered." *MacKinnon*, 31 Cal.4th at 649, 3 Cal.Rptr.3d 228, 73 P.3d 1205. Here, the undisputed evidence reveals that the third party claims sought damages from injuries related to a one-time release of ammonia into the atmosphere—not a long term, or repeated, release of an item into the environment. Moreover, where there is doubt about a coverage issue, the insurer needs to err on the side of providing a defense. Defendant could have provided a timely defense under a reservation of rights, however, Defendant elected to deny the claim. Accordingly, the Court finds Defendant's argument that the law changed and therefore it did not breach the duty of good faith and fair dealing unconvincing. The Court now turns to Defendant's remaining arguments.

Defendant's second argument in support of its motion for summary adjudication on Plaintiff's bad faith cause of action (based on third party coverage) is that subsequent California case law reveals that "an insurer faced with similar facts, would not owe a duty to defend its insured based on a pollution exclusion in a commercial general liability policy." MSJ Two, p. 13. In support of this argument Defendant cites *Garamendi v. Golden Eagle Insurance Co.*, 127 Cal.App.4th 480, 25 Cal.Rptr.3d 642 (2005). In *Garamendi*, the California Court of Appeal, First District, held that an insurer's denial of defense of its insured against claims asserted by third parties for injuries caused by repeated long-term exposure to silica and silica dust was proper based on a pollution exclusion contained in a commercial general liability policy. *Id.* at 482, 25 Cal.Rptr.3d 642. According to the *Garamendi* court:

> [U]nder *MacKinnon* the mere fact that silica, like almost anything else, may be an irritant or contaminant under some circumstances is not dispositive. But unlike the residential use of a pesticide for the purpose of killing insects, the widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations most assuredly is what is "commonly thought of as pollution" and "environmental pollution."

*Id.* at 486, 25 Cal.Rptr.3d 642 (quoting *MacKinnon,* 31 Cal.4th at 653–54, 3 Cal. Rptr.3d 228, 73 P.3d 1205).

Defendant argues that "[t]he present matter clearly falls into the latter category of industrial operations commonly thought of as pollution." MSJ Two, p. 14. However, the Court concludes that the facts in the instant case more closely resemble those in *MacKinnon* than the facts in *Garamendi.* Here, unlike *Garamendi,* the injury causing event was a one-time release of ammonia in a high concentration into the air. There is no suggestion that Plaintiff's normal operations released large quantities of ammonia into the air. By contrast, in *Garamendi* the insured's normal operations released silica and silica dust into the air. *Garamendi,* 127 Cal. App.4th at 483, 25 Cal.Rptr.3d 642. It should be further noted that Defendant's reliance on *Garamendi* is further undercut by that fact that *Garamendi* involved a slightly different analysis because the insurer was in liquidation, and therefore the scope of the California Court of Appeals review "of determinations of both the superior court and the liquidation trustees in the resolution of claims by insureds against an insolvent carrier is circumscribed." *Garamendi,* 127 Cal.App.4th at 484, 25 Cal.Rptr.3d 642. In sum, the Court concludes that Defendant's argument that subsequent case law shows it would not owe a duty to defend Plaintiff against the third party claims fails.

The Court turns to Defendant's final argument in support of its motion for summary judgment on the bad faith claim: that it is entitled to summary judgment because it acted reasonably in initially denying the claim due to the unsettled nature of the law. According to a recent decision of the California Court of Appeals,

> The mistaken [or erroneous] withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under California law, does not expose the insurer to bad faith liability. [Citations omitted.] Without more, such a denial of benefits is merely a breach of contract. Moreover, the reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made; the evaluation cannot fairly be made in the light of subsequent events that may provide evidence of the insurer's errors. [Citations omitted.] Thus, before an insurer can be found to have acted tortiously (i.e., in bad faith), for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted *unreasonably* or *without proper cause.* [Citations omitted] [emphasis in original.] However, when there is a *genuine issue* as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute. [Citations omitted.]

*Chateau Chamberay Homeowners Association v. Associated International Ins. Co.,* 90 Cal.App.4th 335, 346–47, 108 Cal. Rptr.2d 776 (2001).

When an insurer relies on existing case law to determine whether or not coverage existed, the preliminary issue is one of reasonableness. "When the issue of the insurer's objective reasonableness depends on an analysis of legal precedent, reasonableness is a legal issue reviewed de novo." *CalFarm Insurance Co. v. Krusiewicz,* 131 Cal.App.4th 273, 31 Cal.Rptr.3d 619, 629 (2005) (internal citations omitted).[10]

---

**10.** Although the parties do not cite *CalFarm Insurance Co. v. Krusiewicz,* as the case was published after the parties' briefs, the Court finds the case helpful to the resolution of the instant motion.

Therefore, the position relied upon by Defendant in denying insurance coverage with respect to the third party claims is an issue of reasonableness that may be determined by the Court in this instance.

 Here, the uncontradicted evidence reveals that Defendant relied on the pollution exclusion contained in the Policy and on legal precedent from the District Court for the Southern District of Mississippi in denying Plaintiff's claim. The *American States* case cited in Defendant's denial letters is nearly identical (factually) to the instant case. It was not unreasonable for Defendant to rely on that case, in the absence of California authority, in determining whether to cover Plaintiff's claim. As the Court has already pointed out, Defendant's decision constituted a breach of contract. However, the facts do not satisfy the standard of bad faith. Plaintiff has failed to present any evidence tending to show that Defendant acted unreasonably or acted without any cause. In sum, while Defendant's coverage position was ultimately proved wrong by the California Supreme Court, the Court does not find that on the basis of the facts submitted that decision was unreasonable or without any cause. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing with respect to the third party claims.

The Court notes that its decision is in accord with the Ninth Circuit's decision in *Safeco v. Guyton.* In that case, the Ninth Circuit held that where the policy at issue involved a genuine issue concerning legal liability under California law the insurer did not act in bad faith by refusing to pay on the policy holder's claims. *Safeco Insurance Co. of America v. Guyton,* 692 F.2d 551, 557 (9th Cir.1982).

### 3. *Plaintiff's Claim for Punitive Damages*

Defendant's final argument addresses Plaintiff's claim for punitive damages. As part of its cause of action for fraud, Plaintiff alleges that Defendant's acts were,

despicable, and subjected plaintiff to cruel and unjust hardship, conscious disregard of its rights under the policy and the law; defendants misrepresented material facts with the intent to deprive plaintiff of its rights and property; said conduct was part and parcel of a widespread and ongoing pattern and practice at FEDERAL; said conduct justifies an award of punitive damages, in an amount calculated to punish defendants, and by way of example, said amount to be determined at trial . . .

FAC, ¶ 37. Defendant moves for summary judgment on Plaintiff's claim for punitive damages. MSJ Two, p. 17.

The Court begins its analysis by noting that it has previously found that Plaintiff fails to demonstrate that Defendant owed Plaintiff any duty to provide the Cornwell report prior to reaching settlement of Plaintiff's first-party claim. Moreover, in response to Defendant's motion, Plaintiff has failed to come forward with any evidence revealing that there is any factual dispute on the issue of whether Defendant was required to provide Plaintiff with a copy of the Cornwell report. Further, Plaintiff has failed to present any evidence that Defendant made a misrepresentation with respect to the Cornwell report. Indeed, the evidence presented by Plaintiff demonstrates that Plaintiff was aware of the existence of the Cornwell report and settled anyway.

 Despite the language of the fraud cause of action contained in the First Amended Complaint, that focuses solely on Defendant's refusal to provide Plaintiff

with the Cornwell report, in its opposition to the instant motion, Plaintiff argues that Defendant's initial denial of the third party claim constitutes fraud. The Court concludes that it is late in the day for Plaintiff to change its fraud theory. Moreover, as correctly stated by Defendant, an insured must establish that the insurer acted with "malic [*sic* ], oppression or fraud" to justify the receipt of punitive damages. *See id.* (citing *Mock v. Michigan Millers Mutual Insurance Co.,* 4 Cal.App.4th 306, 328, 5 Cal.Rptr.2d 594 (1992); *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.,* 78 Cal.App.4th 847, 890–893, 93 Cal.Rptr.2d 364 (2000)). Defendant argues that Plaintiff cannot provide clear and convincing evidence that Defendant acted "maliciously, oppressively or fraudulently," and even further that Defendant's actions were "despicable" as required by California Civil Code § 3294. *See id.*

Plaintiff argues that its own expert, and the *MacKinnon* court noted that the original intent of insurance companies in adopting pollution exclusions in approximately 1985 was to "exclude from coverage government-mandated pollution clean-up." *See* Opposition Br. (Two), p. 9; *see also MacKinnon,* 31 Cal.4th at 643–645, 3 Cal. Rptr.3d 228, 73 P.3d 1205 (discussing the history of the adoption of pollution exclusions as a general practice of insurance companies). Plaintiff asserts that it need not prove that Defendant acted "despicable" in order to receive punitive damages in an allegation of fraudulent conduct. *See id.* Plaintiff supports this contention by citation to California Civil Code Section 3294(3), which includes the requirement of a finding of "despicable" action, but only requires such finding for allegations of malicious or oppressive behavior. *See id.* (citing Cal. Civ.Code, § 3294(3)). Plaintiff notes that the section does not require a finding of "despicable" behavior when the underlying conduct for the prayer for punitive relief is fraud. *See id.*

Section 3294(3) defines fraud as "an intentional misrepresentation, deceit or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise cause injury." Cal. Civ.Code, § 3294(3). Plaintiff claims that Defendant must have known its intent in adopting the pollution exclusion, but concealed such intent when it attempted to take the position that the pollution exclusion covered acts of ordinary negligence, such as the sudden ammonia accident. *See* Opposition Br. (Two), p. 9. Therefore, Plaintiff argues that in Defendant's fraudulent concealment of its true intent, Defendant deprived Plaintiff of its right to coverage under the Policy. *See id.*

Defendant responds to Plaintiff's "intent" argument by claiming that there is no evidence to support Plaintiff's allegations of what Defendant's intent was in adopting the pollution exclusion. *See* Reply Br. (Two), p. 9. Defendant further argues that Plaintiff cannot rely on the *MacKinnon* decision to support its argument of Defendant's intent, for the traditional pollution exclusion that is discussed in *MacKinnon* was not as broad as the exclusion used by Defendant. *See id.* Defendant argues that in fact its pollution exclusion expands its coverage to injuries caused by " 'seepage' and 'migration' of pollutants." *Id.* Defendant argues that the ammonia released in this case may easily fall into the category of migration, which it defines as: " 'to move from one place to another.' " *Id.*

■■■ As noted by Defendant, Civil Code Section 3294(a) states in part:

(a) In an action for the breach of an obligation not arising from contract, where it is proven by *clear and convinc-*

*ing evidence* that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

CA C.C. 3294(a); *see also Mock,* 4 Cal. App.4th at 328, 5 Cal.Rptr.2d 594; *Shade Foods,* 78 Cal.App.4th at 890, 93 Cal. Rptr.2d 364. Here, the Court concludes that there is no material factual dispute and there is no evidence that Defendant acted with oppression, fraud, or malice in initially denying Plaintiff's third party claim. Accordingly, the Court **GRANTS** Defendant's motion for summary adjudication with respect to Plaintiff's request for punitive damages.

### V. *Conclusion and Order*

Having considered the papers submitted, the declarations and other evidence submitted, the complete file and records in this case, and the relevant law, **IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment One [Doc. No. 15] relating to Plaintiff's causes of action for breach of contract and bad faith arising out of first-party insurance coverage is **GRANTED. IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment Two [Doc. No. 22] on Plaintiff's claims arising out of third party insurance coverage is **GRANTED IN PART** and **DENIED IN PART. IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment on Plaintiff's claim for breach of contract, based on third party coverage, is **DENIED. IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment on Plaintiff's bad faith claim is **GRANTED. IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary

Judgment on Plaintiff's request for punitive damages is **GRANTED.**

**IT IS SO ORDERED.**